**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | | |
|---|---|---|
| LYNDA BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:05-1649-MBS-BM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CHESTER LANCASTER | ) | |
| DISABILITIES AND SPECIAL | ) | |
| NEEDS BOARD, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e, et. seq., alleging a claim of race discrimination, as well as pendant state

law claims for breach of contract, breach of contract accompanied by a fraudulent act, and the tort

of wrongful discharge. The Defendant filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P. on June 2, 2006. Plaintiff filed a memorandum in opposition on July 10, 2006,

following which the Defendant filed a reply memorandum on July 25, 2006. Defendant's motion

is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local
Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As
this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff , an African-American, began her employment with the Defendant as an Assistant Program Director in 1998.  A few years later she was promoted to the position of Program Coordinator.  Plaintiff's Deposition, pp. 14-17, 27-31.  Plaintiff was initially interviewed and hired by Sheila McWaters, at that time the Defendant's Vocational Director, and Lisa Boatwright, the then Executive Director.  Plaintiff's Deposition, pp. 14-17.   Subsequently,  McWaters (by that time the Residential Director) recommended Plaintiff for promotion to the Program Coordinator position, and that promotion was then approved by then Executive Director Jay Altman. Plaintiff's Deposition, pp. 29-33; Altman Affidavit, ¶ 2.  Plaintiff got along well with McWaters, who remained Plaintiff's supervisor throughout Plaintiff's period of employment.  Plaintiff's Deposition, pp. 33-35, 39, 128.

Plaintiff became ill on the morning of June 14, 2004, a work day, and went to see her doctor.  She was subsequently admitted to the hospital for tests on June 17, 2004, and underwent hernia surgery on June 19, 2004.  She thereafter remained out of work on medical leave until August 21, 2004.  Plaintiff's Deposition, pp. 57-64, Defendant's Exhibits 4 & 5.  Plaintiff testified that while she was out on leave, she was asked to sign various papers and review files, which involved hours of work.  Plaintiff's Deposition, pp. 183-185.  After she was released by her doctor to return to work on August 21, 2004, she took an additional week off to attend the funeral of a brother-in-law in Delaware, returning to work on August 29, 2004.  Plaintiff's Deposition, pp. 64-66, 99, 133.

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



A few weeks later, however, Plaintiff turned in a letter of resignation to McWaters. Plaintiff's Deposition, p. 71; Defendant's Exhibit 6. Plaintiff testified that McWaters subsequently telephoned her, saying that she [McWaters] thought the letter was Plaintiff's sister, Jamie[3]. Plaintiff confirmed to McWaters that it was her letter of resignation, and that she was resigning because she was "tired of you all harassing me and doing things to me....". Plaintiff's Deposition, p. 72. McWaters told Plaintiff that she needed to "think about this", and that Plaintiff should take a few days off and come back in on September 22 and they "would talk about it". Plaintiff's Deposition, pp. 72, 92, 177. McWaters later told Plaintiff to come in on the 21st, but when Plaintiff came in on the 21st to meet with McWaters, McWaters told her that Plaintiff's son, Marco, had called Executive Director Altman, that Altman was "P.O.'D", and that Altman had called McWaters and told her not to hire the Plaintiff back. Plaintiff's Deposition, pp. 72-74, 78.

Plaintiff filed for unemployment compensation, but her claim was denied following a hearing on the grounds that she had voluntarily resigned her employment. Plaintiff's Deposition, Exhibits 9 & 10. Plaintiff thereafter filed an administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 16, 2004, alleging race discrimination due to the Defendant's refusal to allow her to return to work. Plaintiff's Deposition, p. 91; Defendant's Exhibit 12. After receiving a right to sue letter, Plaintiff filed this action in United States District Court.

---

[3]Plaintiff's sister, also an employee (or former employee) of the Defendant, was apparently on bad terms with the Defendant. See Plaintiff's Deposition, pp. 72-74, 76, 78-79, 177.



**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**Race Discrimination Claim**

**I.**

**(Harassment Claim)**

As part of her race discrimination claim, Plaintiff alleges that she was harassed and forced to do work at home while on medical leave on the basis of her race. See Complaint, ¶¶ 19-22. Defendant argues that, to the extent Plaintiff is attempting to assert such a claim, it is subject to dismissal for failure to exhaust administrative remedies.  Plaintiff argues that this claim has been exhausted because it is reasonably related to the claim set forth in her administrative charge, and/or because a reasonable investigation of her administrative charge would have covered this claim.

In order to bring a lawsuit in United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three  hundred (300) days from the alleged discriminatory act or acts if



the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e). It is undisputed that South Carolina is a deferral state, and that the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of initiating state proceedings. Plaintiff initiated her complaint by filing an administrative charge with SCHAC. Plaintiff's Deposition, Defendant's Exhibit 12. Therefore, Plaintiff had three hundred (300) days to file an administrative charge asserting her harassment claim, and a failure by her to do so bars her from pursuing a Title VII lawsuit on that claim in this Court. United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); Mickel v. South Carolina State Employment Serv., 377 F.2d 239, 242 (4th Cir. 1967).

It is undisputed that Plaintiff timely filed her administrative charge asserting a claim of race discrimination, as follows:

> I have worked for the above Agency since May 16, 1998 as SLP/CTH Coordinator. On September 16, 2004, I resigned my position. However, on September 21, 2004, I attempted to take back the resignation but was denied.
>
> On September 16, 2004 I provided a letter of resignation to Sheila McWaters, Residential Director. I later explained to Sheila that I was under a lot of stress, and wasn't being productive at work. Sheila told me to take a few days off and to come back the following week to discuss things. On September 21, 2004, when I met with Sheila McWaters, she told me that because my son called and talked to the Executive Director, she was going to accept my letter of resignation. I am aware that a White coworker, Bessie Neese, was placed on a leave of absence after she threatened to resign her position and after her mom called and spoke with the Executive Director.
>
> I believe I was discharged and not given any additional time away from work because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff's Deposition, Defendant's Exhibit 12.

5



A plain reading of this administrative charge confirms that Plaintiff exhausted her administrative remedies with respect to her claim that she was discriminated against on the basis of her race when she was terminated from the Defendant's employ.  However, the undersigned is constrained to agree with the Defendant that Plaintiff makes no claim in this administrative charge relating to having been harassed or forced to do work while on medical leave, nor has Plaintiff provided a copy of the SCHAC report on her claim or any other evidence to show that such a charge was considered as part of the administrative investigation of her claim.

Plaintiff may not now change, or add a new, theory of liability.  See Marshall v. Federal Exp. Corp., 130 F.3d 1095, 1098 (D.C.Cir. 1997) ["[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to timely file the EEOC charge."] (quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).  Therefore, as the record and evidence before this Court shows that Plaintiff failed to administratively exhaust her claim that she was harassed or forced to do work while on medical leave, this claim is procedurally barred from consideration by this Court, and should be dismissed.  Smith v. First Union National Bank, 202 F.3d 234, 247 (4th Cir. 2000) [EEOC charge "defines the scope of [a plaintiff's] subsequent right to institute a civil suit"]; Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [a Title VII claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]; Chacko v. Patuxent Institution, 429 F.3d 505, 509 (4th Cir. 2005).



## II.

## (Discharge Claim)

Plaintiff's discharge claim is for disparate treatment, based on her allegation that she was discriminated against on the basis of her race when she was terminated by the Defendant. Disparate treatment cases under Title VII require proof of intentional discrimination, either by direct evidence or by the structured procedures set froth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not offered any direct evidence of race discrimination in her discharge.[4] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[5]

The United States Supreme Court articulated a three-part analysis for evaluating discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of

---

[4]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[5]In addition to a McDonnell Douglas analysis, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).



discrimination.  Once a prima facie case has been established, a rebuttable presumption is created

that the employer unlawfully discriminated against the Plaintiff.  Second, once this presumption has

been established, the burden of production shifts to the employer to show a legitimate, non-

discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory

reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the

employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and

that the actions of the employer were really based on Plaintiff's race.  McDonnell Douglas Corp.,

411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v.

Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991).  Despite these shifting burdens

of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of

discrimination throughout.  Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

       To establish her prima facie case of discrimination, Plaintiff must show the following:

(1) that she is a member of a protected class; (2) that she was qualified for her position; (3) that she

was fired in spite of her qualifications and adequate performance of her duties; and (4) that similarly

situated employees outside of her protected class received more favorable treatment, or that she was

otherwise discharged under circumstances giving rise to an inference of unlawful discrimination.

See Settle v. Baltimore County, 34 F.Supp.2d 969, 991 (D.Md. 1999), aff'd sub nom., Harris v.

Earp, 203 F.3d 822 (table) (4th Cir. 2000); see generally, Causey v. Balog, 162 F.3d 795, 802 (4th

Cir. 1998); Brinkley v. Harbour Rec. Club, 180 F.3d 598, 607 (4th Cir. 1999); St. Mary's Honor



Ctr., 509 U.S. at 506.[6]  It is uncontested for purposes of summary judgment that Plaintiff meets the first two prongs of her prima facie case.  However, Defendant argues that Plaintiff was not fired from her job; rather, she voluntarily resigned, and that there is no evidence before the Court to show that any resignation by the Plaintiff was in anyway a "constructive discharge" for purposes of a Title VII claim.  Defendant also argues that there is no evidence that similarly situated employees outside of Plaintiff's protected class received more favorable treatment.

With respect to the Defendant's first argument, the undersigned finds that sufficient evidence has been submitted to give rise to a genuine issue of fact as to whether Plaintiff was terminated by the Defendant to satisfy the third prong of her prima facie case.  There is no evidence to show that Plaintiff had not been adequately performing her job prior to having gone out on medical leave; Brown v. Chicago Transit Authority, No. 97-7041, 1999 WL 495622 at *5 (N.D.Ill. June 28, 1999) [Plaintiff's general job performance, not the specific incident(s) which may have precipitated his termination, is the proper question to consider in determining whether Plaintiff can establish the satisfactory performance element of his prima facie case]; Crosby v. Federal Signal Corp., No. 97-4967, 1998 WL 603125 at *5 (N.D.Ill. Sept. 4, 1998); and the evidence, considered in the light most favorable to the Plaintiff, is sufficient to give rise to at least an inference that McWaters had not accepted Plaintiff's resignation letter, that the entire matter had been or was going to be revisited, but that when Plaintiff came in to talk to McWaters she was advised at that time that Altman did not want her retained and that she was therefore terminated.  Plaintiff's Deposition, pp. 72-79, 176-177, 180, 191.  Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["[A]t the

---

[6]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58(4th Cir. 1995).



summary judgment stage the only inquiry...is 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact]'"], citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-252 (1986).

With respect to the fourth prong of the prima facie case, Defendant argues that Plaintiff has presented no evidence to show that she was treated differently than similarly situated white employees, and that nothing in the context of Plaintiff's resignation/discharge gives rise to an inference of unlawful discrimination. As support for a racial motive, Plaintiff points to the treatment of white employee Bessie Neese, who was allowed to keep working for the Defendant after threatening to resign. <u>See</u> <u>Plaintiff's Deposition</u>, pp. 95-96, 129-132, 195-196. Instead, Neese was apparently allowed to take some medical leave, following which she returned to work. <u>Id</u>.

Defendant argues that there are several differences between Plaintiff's and Neese's situations. First, unlike Plaintiff, Neese never actually resigned. Second, Neese was supervised by a different individual, Alfredia Stephenson, not McWaters. <u>Plaintiff's Deposition</u>, pp. 96, 126-127, 143. Third, Plaintiff testified that, after Neese had threatened to quit, her leave of absence was arranged by Human Resources Director Jonathan Spray, due to a personal friendship between the two. <u>Plaintiff's Deposition</u>, pp. 129-132. Defendant argues that none of these factors implicate a racial component between the treatment of the Plaintiff and Neese, and that the two employees' situations were in addition not even similar to each other, since Neese never actually resigned. Defendant also argues that all of the information provided about Neese is based on hearsay testimony of the Plaintiff and another deponent, Adsila McIlwain; <u>see</u> <u>Plaintiff's Deposition</u>, pp. 95-96, 129-132, 195-196; <u>McIlwain Deposition</u>, p. 74; and that this testimony is therefore not even admissible evidence.



Plaintiff does not directly respond to Defendant's arguments in its brief that any evidence regarding Neese is based on hearsay testimony, nor does she offer any specific rebuttal to the individual points raised by the Defendant to dispute an inference of discriminatory animus. Nevertheless, even if the Court were to consider the testimony that Neese retained her position to be sufficient evidence for purposes of summary judgment to establish the fourth prong of Plaintiff's prima facie case;     see Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous]; the Defendant has submitted evidence to show that Plaintiff submitted a letter of resignation, that when she subsequently met with her supervisor she was told that her son had called the executive director (apparently to complain about issues related to his mother), which irritated the executive director, and that her resignation was then accepted. Plaintiff's Deposition, pp. 71-79; Defendant's Exhibit 6.   This evidence is sufficient for the Defendant to meet its burden of production to show a legitimate, non-discriminatory reason for its actions; see EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [the defendant's burden is only one of production, not of persuasion]; and the evidence before the Court is not otherwise sufficient to create a genuine issue of fact as to whether the Defendant's proffered reason for its actions is a mere pretext for discriminatory conduct to allow this claim to proceed.

In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to discriminate against her because of her race, she would not have lost her job. EEOC., 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir.



1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence.  Plaintiff conceded that she and her supervisor, McWaters, got along "great", and that she had never complained about, nor filed any kind of grievance complaining about, her working conditions or any type of discrimination prior to the submission of her resignation letter on August 6, 2004.  Plaintiff's Deposition, pp. 33, 39, 46, 128.  Indeed, McWaters' own race has not even been identified in the filings with this Court, and Plaintiff's general and conclusory claim that McWaters' attempts to have Plaintiff do some work while she was out on medical leave, requested her assistance in communicating with her [Plaintiff's] sister (who also worked for the Defendant and was experiencing employment problems), and subsequently refused to retain Plaintiff in her job, evidences some kind of discriminatory animus on McWaters' part simply fails for lack of any probative evidence.  See  Causey, 162 F.3d at 802 [Conclusory statements, without specific evidentiary support, do not support a claim for discrimination].  To the contrary, the evidence shows that McWaters not only hired the Plaintiff initially, but was responsible for Plaintiff's promotion to the position of Program Coordinator, even recommending that a degree requirement be waived so that Plaintiff could obtain the promotion. Plaintiff's Deposition, pp. 27-33; *cf.* Evans v. Technologies Applications & Service Co., 80 F.3d 954, 959 (4th Cir. 1996) [where the person who hired the plaintiff is the same person who refused to promote her, "there is a powerful inference that the failure to promote her was not motivated by discriminatory animus."](internal quotations and citation omitted).

Further, even assuming Plaintiff's testimony to be correct that the reason the Defendant decided to accept her resignation and  not allow her to retain her job was because her son

12



called Altman and made him mad, no *racial* motivation is shown in this evidence.  Plaintiff has

presented no evidence to show that the conversation between Altman and her son had any racial

component, that Altman made any race based statements in his conversation with McWaters

following this telephone conversation, or that Altman himself had any history of racial bias or

animus towards the Plaintiff or any other African-American employee.[7]  Indeed, Altman is the one

who approved Plaintiff's promotion to Program Coordinator, even though she lacked the required

degree for this position. Plaintiff's Deposition, pp. 29-33; Evans, 80 F.3d at 959 [where person who

terminates a plaintiff is the same person who hired them, there is a "powerful inference" that

discrimination was not the motive for termination];  Hawkins v. Pepsico, Inc., 203 F.3d 274, 281

(4th Cir. 2000) [affirming the grant of summary judgment to the employer on Title VII claim where

the employee did not "show that...[the] problems were racial in nature"]; Cook v. CSK Transp.

Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a case of race

discrimination under Title VII"].

        The evidence also reflects that Plaintiff felt like she was being placed under a lot of

stress due to having to deal with her own medical condition as well as her sister's problems, and that

she believed she was treated unfairly by the Defendant and the Defendant did not have good cause

for not allowing her to continue with her position.  However, while all of this may or may not be

true,  the question before the Court is not whether the evidence shows that Plaintiff was treated

unfairly.  Rather, in order to proceed with her Title VII claim, the evidence must show that Plaintiff

suffered the adverse employment action at issue *because of her race*, not because she was treated

unfairly or because of other reasons.  Jamil v. Secretary Dep't of Defense, 910 F.2d 1203, 1207-1208

---

[7]As is the case with McWaters, Altman's own race is not even set forth in the evidence.



(4th Cir. 1990); <u>Holder v. Raleigh</u>, 867 F.2d 823, 828 (4th Cir. 1989); <u>Crowley v. Prince George's</u>

<u>County</u>, 890 F.2d 683, 687 (4th Cir. 1989), <u>cert. denied</u>, 111 S.Ct. 101 (1992); <u>McCollum v. Bolger</u>,

794 F.2d 602, 610 (11th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1034 (1987); <u>see generally</u> <u>Moore v.</u>

<u>Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); <u>Jones v. Orleans Parish School</u>

<u>Board</u>, 679 F.2d 32, 38 (5th Cir. 1982), <u>cert. denied</u>, 461 U.S. 951 (1983); <u>North Carolina Dep't of</u>

<u>Corrections v. Gibson</u>, 301 S.E.2d 78, 85 (N.C. 1983); <u>St. Mary's Honor Ctr. v. Hicks</u>, <u>supra</u>.

Plaintiff has failed to submit any such evidence.

At summary judgment, the non-moving party has an obligation to present evidence

to save his or her allegations from the status of speculation, and must respond with specific facts

showing a genuine issue for trial.  Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322

(1986); <u>Gairola</u>, 753 F.2d at 1288, n. 4. Although Plaintiff may sincerely believe that she was

subjected to race discrimination, a Title VII plaintiff cannot defeat a properly supported motion for

summary judgment with unsupported speculation   or allegations of discrimination. <u>Ross v.</u>

<u>Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985); <u>Felty v. Graves-Humphreys,</u>

<u>Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987); <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985) [A

party opposing summary judgment "cannot create a general issue of fact through mere speculation

or by the building of one inference upon another."].   Therefore, for all the reasons set forth

hereinabove, Plaintiff's race discrimination claim should be dismissed.

### State Law Causes of Action

Defendant seeks dismissal of Plaintiff's state law claims on the basis of Eleventh

Amendment immunity from suit in this Court. In her brief opposing summary judgment, Plaintiff

14



requests that this Court dismiss her state law claims, without prejudice, so that she may pursue them

in state court.   Therefore, these claims should be dismissed, without prejudice.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary

judgment with regard to Plaintiff's Title VII race discrimination claim be **granted**, and that this

 claim be **dismissed**.  It is further recommended that Plaintiff's remaining state law causes of action

be **dismissed**, without prejudice.

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 13, 2006

15

