IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Lynda Belton, ) | |
| ) | C.A. No. 0:05-CV-01649-MBS |
| Plaintiff, ) | |
| ) | **OPINION AND** |
| vs. ) | **ORDER** |
| ) | |
| Chester Lancaster Disabilities and Special Needs ) | |
| Board, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Lynda Belton brought this action on June 9, 2005 against her former employer, Defendant Chester Lancaster Disabilities and Special Needs Board, Incorporated ("CLDSNB"). Belton alleges (1) disparate treatment because of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a); (2) breach of contract; (3) breach of contract with fraudulent intent; and (4) wrongful discharge.

CLDSNB filed a motion for summary judgment on June 2, 2006. Belton filed a memorandum in opposition to CLDSNB's motion on July 10, 2006. CLDSNB filed a reply memorandum on July 25, 2006.

In accordance with 28 U.S.C. §646(b) and Local Rule 73.02(B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pre-trial handling. On December 13, 2006, the Magistrate Judge filed a Report and Recommendation in which he recommended that CLDSNB's motion for summary judgment be granted as to Belton's Title VII claim and that her state law causes of action be dismissed without prejudice. Belton filed objections to the Report and Recommendation on January 4, 2007. CLDSNB filed a reply to Belton's objections on January 11, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**I.    FACTS**.

The facts underlying Belton's claims are set forth at length in the Magistrate Judge's Report and Recommendation. Briefly, Belton, who is African American, was employed by Defendant as a "direct care" staff member in 1998, where she provided care for disabled persons in residential homes. (Belton Dep. at 15.) One month later, Sheila McWaters, who was Defendant's residential director, recommended Plaintiff for promotion to program supervisor. (*Id.*) McWaters' recommendation was approved by Executive Director Jay Altman. (*Id.* at 16, 29-33.) As a program supervisor, Plaintiff directly reported to McWaters. (*Id.* at 29-33.)

Plaintiff became ill on June 14, 2004. (*Id.* at 40.) Plaintiff was admitted to the hospital for tests on June 17, 2004, and underwent hernia surgery on June 19, 2004. (*Id.*) Plaintiff remained on medical leave until August 21, 2004. (*Id.* at 57-64.) Plaintiff alleged that, while out on leave, she was asked to sign various papers and review numerous files, which involved hours of work. (*Id.* at 183-85.) Plaintiff was released by her doctor to return to work on August 21, 2004. (*Id.*) Plaintiff returned to work on August 29, 2004. (*Id.* at 64-66.)

On September 16, 2004, Plaintiff submitted a letter of resignation, her office keys, and her

pager to McWaters. (*Id.* at 71.)  Two hours later, McWaters telephoned Plaintiff inquiring as to why she was resigning. (*Id.*)  McWaters advised Plaintiff to "think about it," particularly as Plaintiff did not have a college degree and may have difficulty securing other employment. (*Id.*)  McWaters requested Plaintiff to come back in on September 22 so that they could "talk about it." (*Id.* at 72.)  Later, Plaintiff recounted this conversation with McWaters to her twenty-seven year old son, Marco Hutchinson. (*Id.* at 74.)

Plaintiff returned to work on September 21, at which time McWaters told Plaintiff that her son, Marco, had called Executive Director Altman. (*Id.* at 74)  On the telephone, Marco had expressed his anger that McWaters had made reference to his mother's lack of a college degree. (*Id.*)  Specifically, Belton alleges that Marco told Altman: "[m]y mom been working there seven years and she don't have to put up with [McWaters] putting her down like that." (*Id.*)  Following the conversation with Marco, Altman was "P.O.'D," and instructed McWaters to not allow Plaintiff to return to work. (*Id.*)  Thus, on September 21, McWaters informed Plaintiff that she was no longer an employee for Defendant, and that any request to return was denied. (*Id.* at 74-76.)

Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2004, alleging race discrimination due to the Defendant's refusal to allow her to return to work. (*Id.* at 91.)  Specifically, the complete narrative of Plaintiff's charge stated the particulars of her claim of discrimination as follows:

> I have worked for the above Agency since May 16, 1998 as SLP/CTH Coordinator. On September 16, 2004, I resigned my position. However, on September 21, 2004, I attempted to take back the resignation, but was denied. On September 16, 2004, I provided a letter of resignation to Sheila McWaters, Residential Director. I later explained to Sheila that I was under a lot of stress, and wasn't being productive at work. Sheila told me to take a few days off and to come

> back the following week to discuss things. On September 21, 2004, when I met with Sheila McWaters, she told me that because my son called and talked to the Executive Director, she was going to accept my letter of resignation. I am aware that a White coworker, Bessie Neese, was placed on leave of absence after she threatened to resign her position and after her mom called and spoke with the Executive Director. I believe I was discharged and not given any additional time away from work because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* (Def. Ex. 12).) In the charge, Plaintiff specified September 21, 2004 as both the earliest and latest date of when the alleged discrimination occurred by Defendant. (*See id.*) After the EEOC sent Plaintiff a right to sue letter, she filed the instant action.

**II     DISCUSSION.**

Plaintiff asserts that the Magistrate Judge improperly recommended dismissal of her allegation of harassment while on medical leave for failure to properly exhaust her administrative remedies. The court disagrees.

As part of Plaintiff's Title VII claim before this court, she alleges that she was harassed and forced to do work at home while on medical leave because of her race. (Complaint ¶¶ 19-22.) However, a review of the record reveals that Plaintiff's charge to the EEOC failed to include any mention that Defendant harassed Plaintiff by requiring her to do work while on medical leave. Factual allegations made in formal litigation must correspond to those set forth in the administrative charge. *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005). A plaintiff's claim will be barred "if the administrative charge alleges one type of discrimination - such as discriminatory failure to promote - and the claim encompasses another type - such as discrimination in pay and benefits." *Id.* Here, Plaintiff's charge alleged a discrete act of racial discrimination: Defendant's refusal to allow Plaintiff to take back a resignation letter. Plaintiff's charge does not allege any

harassment stemming from Plaintiff's work while she was on medical leave. Further, Plaintiff's specification of September 21, 2004 as both the earliest and latest date of occurrence of the discrimination further substantiates that Plaintiff did not exhaust a claim of discrimination for when she was on medical leave. *See id.* at 511 (finding a Plaintiff's harassment allegations barred as the acts alleged did not fall within time span listed on EEOC charge). A reasonable investigation would not have uncovered the harassment allegation that Plaintiff now sets forth in formal litigation. *Id.* at 512. Thus, as recommended by the Magistrate Judge, the Plaintiff has failed to administratively exhaust her claim that she was harassed while on medical leave.

Plaintiff next asserts that the Magistrate Judge improperly recommended that her Complaint be dismissed because she did not establish a valid claim of discrimination with regard to her termination. Specifically, Plaintiff objects to the Magistrate Judge's finding that Defendant's legitimate non-discriminatory reason was not pretextual.

Plaintiff has been unable to provide evidence that the grounds given by Defendant in refusing to allow Plaintiff to withdraw her resignation were pretext and that her termination was actually a result of discrimination based on her race. As alleged by Plaintiff, Defendant's refused to allow Plaintiff to take back her resignation because her son called Executive Director Altman and made him angry. (Belton Dep. at 74.) Plaintiff does not allege that the conversation between Altman and Plaintiff's son had any racial component. (*Id.*) In addition, Plaintiff has offered no evidence of any actions by Altman or McWaters of an overtly racial nature, such as use of racially offensive language or conduct. (*Id.*) Plaintiff has also conceded that her relationship with McWaters was "great," that, despite the fact that Plaintiff did not have a college degree, McWaters and Altman promoted Plaintiff to a position typically reserved for college graduates, and that McWaters and Altman initially did

not want Plaintiff to resign. (*Id.* at 31-34.) Thus, the Magistrate Judge properly found no genuine issue of material fact that Defendant's legitimate non-discriminatory reason was not pretextual.

### III. CONCLUSION.

For the foregoing reasons, the court concurs in the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment with regard to Plaintiff's Title VII race discrimination claim. Defendant's motion further requests that Plaintiff's state law claims of breach of contract, breach of contract with fraudulent intent, and wrongful discharge be dismissed. In response, Plaintiff "respectfully asks that these [sic] claims be dismissed without prejudice so that she may bring them in state court." (Pl.'s Memo. in Opposition to Def.'s Mot. for Summary J. 11 (Entry 23).) Accordingly, Plaintiff's state law claims are **dismissed without prejudice**. Defendant's motion for summary judgment (Entry 15) on Plaintiff's Title VII claim is **granted**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina

February 14, 2007